COMPAÑÍA AGRÍCOLA DE CAYEY, LTD., Plaintiff and Appellant, v. MANUEL V. DOMENECH, TREASURER, Defendant and Appellee.

No. 6594. Argued February 21, 1934.—Decided September 29, 1934.

*R. Soltero Peralta* for appellant. *Benjamin J. Horton, Attorney General*, and *R. Cordovés Arana, Assistant Attorney General*, for appellee.

MR. JUSTICE WOLF delivered the opinion of the Court.

Under the title of "Credits and Refunds", Section 64 of Act No. 74, passed by the Legislature of Puerto Rico on August 6, 1925, (Session Laws, p. 400, 526,) and known as the Income Tax Act of 1924, provides:

"Section 64.—(a) Where there has been an overpayment of any income or excess-profits tax imposed by this Act, or by Income Tax Act No. 59 of 1917, Income Tax Act No. 80 of 1919, and Income Tax Tax Act No. 43 of 1921, or any such Act as amended, the amount of such overpayment shall be credited against any income or excess-profits tax or installment thereof then due from the taxpayer, and any balance of such excess shall be refunded immediately to the taxpayer.

"When a payment has been made of any income or excess-profits tax under the Income Tax Act No. 43 of 1921, as amended, for the calendar year 1924, or for any fiscal year ending in 1925, the amount of such payment shall be credited to any income or excess-profits tax then owed by the taxpayer pursuant to the provisions of this Act or of the acts hereinbefore amended in this subdivision or any amendment thereof, and any balance of such excess shall be immediately reimbursed to the taxpayer.

"(b) Except as provided in subdivision (c) of this Section, (1) no such credit or refund shall be allowed or made four years from the time the tax was paid, unless before the expiration of such four years a claim therefor is filed by the taxpayer, nor (2) shall the amount of the credit or refund exceed the portion of the tax paid during the four years immediately preceding the filing of the claim or, if no claim was filed, then during the four years immediately preceding the allowance of the credit or refund.

". . . . . . . . . . . ."

The appellant herein sought to recover income taxes unduly paid by it for the years 1921, 1922, and 1923. The Treasurer allowed the appellant a part of the amount claimed, but denied the balance of $352.57, whereupon the appellant brought suit against the Treasurer in the District of San Juan.

The defendant, the Treasurer, filed a demurrer to the complaint on several grounds. The court sustained the demurrer on one ground alone in the following manner:

"The demurrer of lack of jurisdiction by reason of the amount involved cannot prevail. It was held by this court in *Calaf* v. *Gallardo*, 36 P.R.R. 131, that district courts and not municipal courts, whatever the amount involved, have jurisdiction of actions for the refund of taxes paid under protest. However, the demurrer of want of jurisdiction for failure to allege the payment under protest, must lie. The People of Puerto Rico, which otherwise could not be sued without its express consent, consented to be sued for the refund of taxes under certain conditions. One of them was that the payment of the taxes had been made under protest. As such condition does not appear *prima facie* from the complaint, it can not be maintained that consent to be sued exists and if there is no such consent the court has no jurisdiction of the action."

When the complainant did not amend, judgment was rendered against it on the 23d of December, 1932, and it appealed.

It may be convenient to add that the claim for the return of the taxes was made in 1928 and that the refusal of the Treasurer to refund the balance was dated May 21, 1930, at which time the Treasurer returned a large part of said taxes. A motion for reconsideration to the Treasurer was denied on January 24, 1933. It does not appear that any part of those taxes was paid under protest, nor that there was an appeal from the decision of the Treasurer to the Board of Review and Equalization.

The appellant maintains that while under Section 76 of the said Act of 1925, appeals must be taken to the Board of Review and Equalization before a suit may be filed, that such provisions of law are applicable only to cases where the

taxes are paid under protest and apparently the Treasurer of Puerto Rico, through his counsel, accepts this proposition. Under the circumstances the appellant insists that it has a right to file a suit for the amount it alleges was unduly retained by the Treasurer.

The Attorney General of Puerto Rico maintains that the act was more or less a copy of a Federal Act; that in the United States a remedy by suit was distinctly given under the statute while in Puerto Rico the Act of 1925 and, perhaps, even subsequent acts are silent on the subject of suits, unless payments are made under protest.

■ The appellee seemingly concedes that in accordance with our decisions in the cases of *Serrallés* v. *Treasurer,* 30 P.R.R. 220, 225 and *McCormick* v. *Bonner, Treasurer,* 44 P.R.R. 419, there was no necessity under the Act of 1919 either to pay under protest or to appeal to the Board of Review and Equalization. He maintains, however, that the Act of 1919 was repealed by the Act of 1921, which suppressed the right to make independent claims to the Treasurer, but required all payments to be made under protest and an appeal to the Board of Review and Equalization.

After the Act of 1921 the right to recur to the Treasurer independently remained in abeyance until Act No. 74 of 1925, *supra,* was passed. The Treasurer, concedes that, in a case like the present one, there ought, under the law, to be some remedy, but that the remedy by suit is not given. He maintains that actions of this nature are not in reality against the officer, the Treasurer, but in essence, are actions against the People of Puerto Rico.

Now, the Act of 1919 directly gave a taxpayer a right of suit upon the failure of the Treasurer to return taxes whether they were paid under protest or not. The subsequent Act of 1921 suppressed the substantive right to recur to the Treasurer independently, but the question arises whether that part of the act which subjected the Treasurer to suit was likewise repealed. In other words, the Legislature in 1919 said that

the Treasurer might be sued to recover taxes which had been previously paid by a taxpayer. The final provision of the Act of 1921 repealed all acts inconsistent therewith, but the question to be decided is whether the remedial part of that act was also suppressed. We have reached the conclusion that it was.

██ ██ It is entirely clear that from 1921 until 1925 the Treasurer was not directly authorized to pay back income taxes as he had been by the Act of 1919. The substantive relief given by the latter act was abrogated. Hence it may be said that the remedy by suit likewise disappeared. From 1921 on a condition precedent for suits was expressly a payment under protest. While the Act of 1921 did not in terms suppress the right to suit it set forth the manner in which taxes could be recovered. And this was the general understanding. We have before us a chart prepared by the Economic Commission of the Legislature which spreads out the acts now in force and the Act of 1919 is omitted. On the whole, while the period elapsed is not very great, contemporaneous construction considered, the Act of 1919 is no longer in force. So that the Act of 1925, while it gave a substantive right to make an appeal to the Treasurer, even if the taxes were not paid under protest, did not continue in force or revive the remedy of the Act of 1919.

The judgment will be affirmed.